# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

Case No. 0:20-cv-60638-WPD/Snow

MADHUKAR BONKURI, individually and on
behalf of all others similarly situated,

    Plaintiffs,

    v.

GRAND CARIBBEAN CRUISES, INC.,

    Defendant.

_____/

## DEFENDANT GRAND CARIBBEAN CRUISES, INC.'S
## OPPOSITION TO PLAINTIFF'S MOTION FOR PROTECTIVE ORDER

Plaintiff Madhukar Bonkuri's Motion for Protective Order seeks an extraordinary order from this Court: to deny Defendant Grand Caribbean Cruises, Inc. ("GCC") the ability to defend itself and conduct an investigation of the purported class action claims by barring its lawyers from interviewing potential class members. GCC has reason to believe that, like Plaintiff, all of the potential class members consented to receive the telephone calls at issue through a particular website. Plaintiff objects to any such communications unless his lawyers are party to defense counsel's investigation, a transgression of bedrock principles protecting an attorney's right to investigate and create work product free from his adversary's interloping. Plaintiff ignores the law and offers no evidence to satisfy *his burden* to obtain the extraordinary relief he seeks, nor does he attempt to disguise that his Motion is based solely on speculation and conjecture, which is plainly insufficient to deny a class action defendant its due process right to investigate and prepare its defenses.

## FACTUAL BACKGROUND

Plaintiff asserts a claim under the Telephone Consumer Protection Act based upon the allegation that he received telephone calls that used a prerecorded voice, something to which he never purportedly consented. Discovery has revealed that Plaintiff consented to receive the telephone calls relating to, among others, GCC on a website called shareyourfreebies.com on September 24, 2019. *See* Ex. A. Plaintiff, however, denies that he is the person who entered his name, date of birth, e-mail address, etc., and gave consent on the website from an IP address located in the Houston, Texas area – where he works and resides – as shown by a report generated by a lead verification company, Jornaya.[1] GCC obtained (and produced to Plaintiff) a document identifying, with contact information and their respective unique Jornaya "lead IDs," over seven thousand people who similarly consented on the shareyourfreebies.com website and thus may have received the same type of telephone call that Plaintiff is suing over in this case.

Although it was not required to do so, in an effort to avoid a dispute or to have it raised promptly with the Court, before ever reaching out to a single person, counsel for GCC advised counsel for Plaintiff that it intends to contact these persons by telephone as part of its investigation of the claims and defenses, in particular the defense of consent. To be very clear, and as counsel for Plaintiff knows, neither GCC nor its counsel have contacted any potential

---

[1] The report from Jornaya contains a link to a "visual playback" that re-enacts, from the tracked data, the user visit to the shareyourfreebies.com website associated with Plaintiff's opt-in.

class member.  Over the course of numerous meet and confer sessions, counsel for GCC made equally clear that the communications would be conducted by counsel, the potential class members would be informed of the existence of the lawsuit, and the calls would be solely for factual investigation, without any settlement offers or offers of anything else being made.  This is detailed in an e-mail counsel for GCC sent and requested that Plaintiff attach to his certificate of conferral to accurately state GCC's position.  *See* Ex. B.[2]  Plaintiff did not do so and instead, without any evidence to point to, mischaracterizes GCC's position repeatedly in his Motion.

## ARGUMENT

The showing required to obtain a protective order under Rule 26 is "more demanding" than the standard "good cause" requirement.  *Culhane v. MSC Cruises (USA), Inc.*, 290 F.R.D. 565, 566 (S.D. Fla. 2013) (Snow, M.J.).  "The party seeking protection has the burden of demonstrating good cause by making a particular and specific demonstration of fact, as opposed to stereotyped or conclusory assertions."  *Id.*  Plaintiff falls far short of satisfying his burden.

Tellingly, Plaintiff's Motion does not address the Supreme Court's controlling decision on restrictions of *pre*-certification class communications.  "[A]n order limiting communications between parties and potential class members should be based on a clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties," and the result must be "a carefully drawn order that limits speech as little as possible, consistent with the rights of the parties under the circumstances."  *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 101-102 (1981).  As one frequently-cited decision summarizes,

> [s]ince *Gulf Oil*, courts have set forth the standard that must be met when a party seeks to restrict communication to putative class members. In so doing, courts have emphasized that ***the moving party must make an evidentiary showing of actual or threatened abuse by the party sought to be restrained***. In this regard, a two-pronged test must be met before a court may restrict communication. ***First, a communication must have occurred or be threatened to occur. Next, the form of communication at issue must be abusive in that "it threatens the proper functioning of the litigation."*** Communications that have been found to be violative of the principles of Rule 23 include misleading communications to class members regarding the litigation, communications that misrepresent the status or effect of the pending action, communications that coerce prospective class

---

[2] As alluded to in the e-mail, Plaintiff's sole explanation for his objection was to point to an order from a different case in a different court involving a different defendant and very, very different factual circumstances.  When confronted, counsel for Plaintiff, who was not involved in the other case, acknowledged that he knows nothing about that other case and, after many years of litigating with defense counsel in this case (in several different matters) he has no reason to believe that defense counsel engaged or will engage in improper conduct in this or any other case.

>members into excluding themselves from the litigation, and communications that undermine cooperation with or confidence in class counsel.

*Jones v. Jeld-Wen, Inc.*, 250 F.R.D. 554, 561 (S.D. Fla. 2008) (emphasis added).

Plaintiff makes no mention of the *Gulf Oil* test, nor does he acknowledge that **_he_** – **_not GCC_** – bears the burden on this Motion, presumably because he has no evidence of a single communication occurring or that any communication will be abusive or threaten the proper functioning of the litigation. All Plaintiff offers is speculation borne out of what occurred in another case in a materially different context (*after* a class had been certified). *See* Mot. at 1-2 (citing *McCurley v. Royal Seas Cruises, Inc.*, No. 17-cv-00986-BAS-AGS, 2020 WL 4436361 (S.D. Cal. July 31, 2020)).[3] Here, the communications will be *pre-certification*, not in the form of a marketing survey, and will be conducted by counsel (not the defendant's employees). The recipients will be informed of the existence of the lawsuit, that they are speaking with a lawyer for GCC, and that they do not have to speak with them. They will be asked about shareyourfreebies.com and about the type of telephone call alleged by Plaintiff. No offers of settlement or anything else will be made. Plaintiff has never contended that any of that would be misleading or inappropriate. He simply speculates, without any basis, that what occurred in *McCurley* may "potential[ly] repeat." Mot. at 1. That is not an evidentiary showing. *See* Fed. R. Evid. 404. Indeed, *Gulf Oil* commands that "**the mere possibility of abuses does not justify routine adoption of a communications ban** . . . ." 452 U.S. at 104 (emphasis added).[4]

There is nothing objectionable or unusual about investigative interviews of this nature with putative class members. "In the context of Rule 23 class actions, the Supreme Court has held that parties or their counsel should not be required to obtain prior judicial approval before communicating in a pre-certification class action, except as needed to prevent serious

---

[3] The communications in *McCurley* took place between a customer service representative employed by the defendant in that case and class members. In *McCurley*, counsel had been of the view that although a class had been certified, communications were still permissible because class notice and the opt-out period had yet to be completed. *Accord In re Wells Fargo Wage & Hour Emp. Practices Litig. (No. III)*, 18 F. Supp. 3d 844, 851 (S.D. Tex. 2014); ABA Formal Op. 07-445, *Contact by Counsel with Putative Members of Class Prior to Class Certification* (Apr. 11, 2007). The court disagreed. And, as discussed throughout, the communications in this case will be materially different in kind than those in *McCurley*. Ultimately, summary judgment was granted in defendant's favor in *McCurley*. *See* 2021 WL 312005 (S.D. Cal. Jan. 29, 2021).

[4] To be clear, there is not even evidence of a "possibility" that defense counsel will engage in some sort of "abusive" conduct. That defense counsel raised this issue prior to contacting a single person – unlike the defendant in *Leidel v. Coinbase, Inc.*, No. 16-81992-CIV, 2019 WL 2578268 (S.D. Fla. June 24, 2019), whose pre-certification communications with potential class members were allowed to continue – further demonstrates their intent to not engage in any conduct that could remotely be deemed improper or abusive.

3

misconduct." *Maddox v. Knowledge Learning Corp.*, 499 F. Supp. 2d 1338, 1342 (N.D. Ga. 2007) (citing *Gulf Oil*, 452 U.S. at 94-95). The American Bar Association issued a formal ethics opinion providing that "[b]efore a class action has been certified, counsel for plaintiff and defense have interests in contacting putative members of the class. Model Rules of Professional Conduct 4.2 and 7.3 do not generally prohibit counsel for either plaintiff or defendant from communicating with persons who may in the future become members of the class." ABA Formal Op. 07-445. A leading treatise observes that "courts generally permit the defendant and defendant's counsel to communicate directly with these absent putative class members before a class action is certified. Defendants may generally gather information about the putative class action . . . ." William B. Rubenstein, 3 *Newberg on Class Actions* § 9:7 (5th ed. Dec. 2020).[5]

And Judge Matthewman recently denied a very similar motion in *Leidel*. The defendant was allowed to continue the communications because "[b]oth parties are permitted to investigate the case—not through formal discovery, but through informal communications with putative class members," and the plaintiff had "not met its burden for obtaining a prospective order" where all he advanced was "mere speculation and no hard evidence" satisfying the second prong of the *Gulf Oil* test. *Id.* at *3-4. Other than the fact that GCC, in good faith, held off from engaging in communications to avoid or resolve any dispute, ***the exact same is true here***.[6]

Plaintiff instead speculates this *could* be *McCurley* redux. To suggest GCC and its lawyers feel completely unbounded by any restrictions, Plaintiff contends GCC believes it lawyers are "permitted to contact putative class members without any limitations whatsoever" or that "there is no legal authority to support imposing limitations on its proposed communications . . . because they will take place outside of discovery and prior to class certification." Mot. at 2-3, 4. That is false. GCC has never disputed that in communications with potential class members its lawyers cannot engage in deceptive, coercive, or misleading statements, and has assured that its lawyers will not do so. Plaintiff has no evidence to the contrary, and has never cited ***any*** authority supporting his position that a court can broadly restrict a defendant's lawyer's communications with any and all potential class members based solely on generalized and

---

[5] Another writes, "absent class members are not represented parties prior to class certification and the expiration of any opt-out period, and thus neither the ethical rules governing communications with represented parties nor the attorney-client privilege, are applicable precertification. Consequently, a defendant pre-certification ordinarily may interview . . . putative class members." 2 *McLaughlin on Class Actions* § 11:1 (17th ed. Oct. 2020).
[6] The courts allow communications with putative class members beyond factual investigation. *See, e.g.*, *Jones*, 250 F.R.D. at 562-64 (permitting communication of a settlement offer). GCC, however, will not be doing that.

speculative concerns of "a potential repeat" in a materially different situation. Perhaps to conceal that he is the party with the burden of a specific evidentiary showing on this Motion, Plaintiff relies primarily on case law regarding formal discovery of class members. But GCC is not now seeking formal discovery or attempting to subject anyone to any judicial process with its concomitant burdens. GCC instead is seeking to be able to call or otherwise communicate with people who do not have to leave the house, produce documents, or answer interrogatories, and can decline to cooperate.[7] Plaintiff bears, and fails to satisfy, the burden in trying to block that. Finally, the proposed compromise of having Plaintiff's lawyers on each call has no legal basis and would needlessly complicate and impede GCC's ability to investigate and obtain information. As the Supreme Court long ago explained,

> ***it is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel***. Proper preparation of a client's case demands that he assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy ***without undue and needless interference***. That is the historical and the necessary way in which lawyers act within the framework of our system of jurisprudence to promote justice and to protect their clients' interests. This work is reflected, of course, in ***interviews***, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs, and countless other tangible and intangible ways—aptly though roughly termed by the Circuit Court of Appeals in this case . . . as the 'Work product of the lawyer.' Were such materials open to opposing counsel on mere demand, much of what is now put down in writing would remain unwritten. An attorney's thoughts, heretofore inviolate, would not be his own. Inefficiency, unfairness and sharp practices would inevitably develop in the giving of legal advice and in the preparation of cases for trial. The effect on the legal profession would be demoralizing. And the interests of the clients and the cause of justice would be poorly served.

*Hickman v. Taylor*, 329 U.S. 495, 510-11 (1947) (emphases added).

Plaintiff appears to believe his lawyers can unilaterally interview the potential class members. The same is true of GCC's lawyers. Plaintiff's Motion for a prospective protective order presents no specific facts or legal basis to satisfy his burden in seeking the extraordinary relief sought. Accordingly, Plaintiff's Motion should be denied.

---

[7] Even in the potentially more onerous context of discovery, courts, including this Court, permit discovery of putative class members where "it is conceivable that . . . [an issue] may create a situation where individual questions predominate over common ones, and because there does not appear to be any other means of obtaining the information." *Cabot East Broward 2 LLC v. Cabot*, No. 16-CV-6128, 2017 WL 4877035, *2 (S.D. Fla. Oct. 27, 2017) (Snow, M.J.). Here, the highly relevant issue of consent – especially if Plaintiff disputes the documentary evidence – will undoubtedly require individualized inquiries of the putative class members. *See, e.g.*, *Shamblin v. Obama for Am.*, No. 8:13-CV-2428-T-33TBM, 2015 WL 1909765, *12 (M.D. Fla. Apr. 27, 2015).

**REQUEST FOR HEARING**

Pursuant to Local Rule 7.1(b), GCC requests oral argument on this Motion to enable full development of the issues, facts, and arguments raised by both parties, which GCC submits would facilitate the Court's resolution of this Motion. GCC anticipates that oral argument on this Motion should take no more than 30 minutes.

Dated: May 13, 2021                                              GREENSPOON MARDER LLP

/s/ Roy Taub
JEFFREY A. BACKMAN, ESQ.
(Fla. Bar No. 0662501)
jeffrey.backman@gmlaw.com
RICHARD W. EPSTEIN, ESQ.
(Fla. Bar No. 229091)
richard.epstein@gmlaw.com
ROY TAUB, ESQ.
(Fla. Bar No. 116263)
roy.taub@gmlaw.com
200 East Broward Blvd., Suite 1800
Fort Lauderdale, Florida 33301
954-491-1120 (Telephone)
954-343-6958 (Facsimile)

*Attorneys for Defendant*
*Grand Caribbean Cruises, Inc.*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that I have filed the foregoing with the Clerk of Court via CM/ECF on May 13, 2021. I further certify that any party that enters an appearance in this matter will receive a copy of this document via CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive Notice of Electronic Filing.

/s/ Roy Taub
ROY TAUB